**FILED**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2012 FEB 27 PM 3: 00

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

| | |
|---|---|
| **AKRAM ISMAIL, M.D.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CASE NO.:** |
| ) | |
| **MICHAEL O. LEAVITT, Secretary of** ) | 5:12-CV-115-OC-34TBS |
| **the United States Department of Health** ) | |
| **and Human Services,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## COMPLAINT FOR JUDICIAL REVIEW

COMES NOW, AKRAM ISMAIL, M.D. ("Dr. Ismail"), the Plaintiff in the above-styled action, and files this Complaint for Judicial Review against MICAHEL O. LEAVITT, Secretary of the United States Department of Health and Human Services (the "Defendant"), regarding the revocation of Plaintiff's Medicare billing privileges by the Center for Medicare and Medicaid Services ("CMS"), and the upholding of that revocation by the Department of Health and Human Services' Departmental Appeals Board (the "Board"), and in support thereof further states and alleges as follows:

### Nature of the Action

1. Pursuant to 42 C.F.R. § 498.5(i)(2), this is an action for judicial review of a revocation of Plaintiff's Medicare billing privileges by Defendant, through their agent CMS, and specifically review of the Board's decision to uphold the revocation.

2. This action also raises a federal question regarding 42 C.F.R. § 424.535.(a)(1),

42 C.F.R. § 424.502 and 42 C.F.R. § 535(a)(9), specifically the ambiguous language of those laws and regulations, and Defendant's reliance on those laws to execute and uphold the revocation of Plaintiff's Medicare billing privileges.

### Parties

3. Dr. Ismail is a medical doctor licensed to practice medicine in the State of Florida, who resides and maintains his medical practice in Lake County, Florida. Currently, Dr. Ismail's medical license is under suspension via an Emergency Suspension Order ("ESO") issued by the Florida Department of Health ("FLDOH") on December 14, 2009. Dr. Ismail has challenged the ESO and the matter is presently in abeyance.

4. The Defendant is a Department of the United States Government charged with, among other thing, the oversight and administration of the Medicare program.

### Jurisdiction and Venue

5. This Court has personal jurisdiction over Dr. Ismail insofar as he is a Florida resident who resides and practices medicine in Lake County, Florida.[1] This Court has personal jurisdiction over the Defendant insofar as it is a Department of the United States Government, which, among other things, administers and oversees the Medicare program within the State of Florida and in Lake County, Florida.

6. This Court has subject matter jurisdiction in this matter pursuant to Article III, United States Constitution, 28 U.S.C. § 1331, 42 U.S.C. § 405(g), 42 U.S.C. § 1395ff(b), 42 C.F.R. § 498.5(i)(2) and 42 C.F.R. § 498.90(b). There is no amount in controversy.

7. Venue lies with this Court and is properly vested in this Court pursuant to 28

---

[1] Dr. Ismail does not currently actively practice medicine pursuant to the terms of the Emergency Suspension

U.S.C. § 1391.

8. In accordance with applicable federal law, Dr. Ismail has exhausted all administrative remedies available to him prior to filing this Complaint, to include, a hearing before an Administrative Law Judge ("ALJ") and review of the ALJ's decision by the Board.

### Standard of Review

9. Scope of review for judicial review of agency action is controlled by 6 U.S.C. § 706, which states in its entirety:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>>
>> (B) contrary to constitutional right, power, privilege, or immunity;
>>
>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>>
>> (D) without observance of procedure required by law;
>>
>> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>>
>> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

---

Order issued by the Florida Department of Health.

> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## Factual Background

10. Dr. Ismail is a physician licensed to practice in both Florida and New Jersey, among other jurisdictions, and is enrolled in the federal Medicare program as a Part B Supplier.

11. On or about December 14, 2009, the Florida Department of Health (the "DOH") entered an Emergency Suspension Order ("ESO") against Dr. Ismail.

12. Based upon the Florida ESO, the New Jersey Board of Medical Examiners suspended Dr. Ismail's New Jersey medical license until such time as his license to practice medicine in Florida is fully reinstated with no restrictions, conditions or probation. However, the New Jersey Board of Medical Examiners incorrectly and inaccurately stated in its May 4, 2010 Final Order of Discipline that the Florida Board of Medicine found that Dr. Ismail violated Florida Statutes by being unable to practice medicine with a reasonable skill and safety due to, among other things, illness or his mental or physical condition, as well as to other alleged violations of Florida Statutes.

13. Dr. Ismail has never been disciplined by the Florida Board of Medicine, nor has the Florida Board of Medicine found that he violated any Florida Statutes. Rather, the DOH entered the ESO against and him, and subsequently filed an Administrative Complaint against Dr. Ismail, which it later modified and refiled as an Amended Administrative Complaint.

14. Under applicable Florida law, an emergency suspension order like the ESO

entered against Dr. Ismail is not a final or permanent order or suspension of a medical doctor's right to practice medicine. Rather, it is a non-final, non-permanent administrative action that the Florida Board of Medicine and the DOH can use to suspend a medical doctor's license if they have a reasonable, but not yet proven, basis to find that the doctor's alleged conduct constitutes an immediate serious danger to the public health, safety, or welfare and requires emergency suspension, restriction, or limitation of a license. See Section 120.60(6), Florida Statutes. However, the DOH's and the Florida Board of Medicine's findings of immediate danger, necessity, and procedural fairness are judicially reviewable, and while a summary suspension, restriction, or limitation may be ordered, and a suspension or revocation proceeding pursuant to Sections 120.569 and 120.57, Florida Statutes, shall also be promptly instituted and acted upon byt the DOH and the Florida Board of Medicine. Id.

15. In response to the DOH's filing of the Amended Administrative Complaint, Dr. Ismail filed the Request for a Formal Administrative Hearing Involving Disputed Issues of Material Fact.

16. At this time, that administrative case is still pending with the DOH and has yet to proceed to a formal administrative hearing or what is commonly known as an administrative trial in the case. The case was initially litigated by the parties at the Florida Division of Administrative Hearings with discovery being allowed to proceed while the hearing in the case was being held in abeyance.

17. As with any civil or administrative litigation proceeding, there is a chance that Dr. Ismail will be absolved of all of the allegations against him in the Amended

Administrative Complaint, and if he is absolved of those following either the formal administrative hearing or a negotiated resolution with the DOH which is accepted by the Florida Board of Medicine, the DOH and the Florida Board of Medicine would be required to or would agree to lift and rescind the ESO, and the Florida Board of Medicine would permit Dr. Ismail to resume practicing medicine in the State of Florida.

18. Section 1831 of the Social Security Act establishes the supplemental medical insurance benefits program for the aged and disabled known as Medicare Part B, or that payment under that program for services rendered to Medicare-eligible beneficiaries may only be made to eligible providers of services and supplies.

19. A supplier must be enrolled in the Medicare program to be eligible to receive payment for physicians' services provided to Medicare beneficiaries, or that the term "physician's services" means professional services performed by physicians, including surgery, consultation, and home, office, and institutional calls.

20. CMS may revoke a provider's enrollment if it is determined that the provider is not in compliance with enrollment requirements. 42 C.F.R. § 424.535(a)(1).

21. CMS may revoke a provider's billing privileges for failure to report required information under 42 C.F.R. § 424.516(d)(1)(ii) and (iii). 42 C.F.R. § 424.535(a)(9). Among other things, physicians who are enrolled Medicare program providers must report to the appropriate CMS contractor within thirty (30) days any adverse legal action taken against them.

22. On August 4, 2010, a notification for the revocation of Medicare billing privileges in the state of New Jersey was issued to Dr. Ismail by Highmark Medicare

Services ("Highmark"), the Part B Carrier for the State of New Jersey contracted with Defendant to administer the Medicare program in New Jersey, and thus, Defendant's agent. In response, Dr. Ismail submitted a Corrective Action Plan to Highmark which Highmark rejected.

23. On October 4, 2010, Dr. Ismail requested reconsideration by a hearing officer of CMS' revocation decision, and that hearing officer did issue a decision on December 29, 2010 which sustained the revocation.

24. On March 3, 2011, Dr. Ismail timely appealed the reconsideration determination to the Civil Remedies Division. CMS filed a Motion for Summary Judgment contending that Dr. Ismail's Medicare enrollment and billing privileges were properly revoked. CMS' Motion for Summary Judgment was granted by the ALJ on June 23, 2011.

25. In rendering his decision, the ALJ made the following findings of law:

a. There was a basis for the revocation of Petitioner's enrollment and billing privileges pursuant to 42 C.F.R. § 424.535(a)(1), because he was not legally authorized to practice medicine as a physician due to the suspension of his license. Act § 1861(r)(42 U.S.C. § 1395x(r)); 42 C.F.R. § 410.20(b).

b. There was a basis for revocation of Petitioner's enrollment and billing privileges pursuant to 42 C.F.R. § 424.535(a)(9) because Petitioner failed to report adverse legal action as required by 42 C.F.R. § 424.516(d)(1)(ii).

26. On August 26, 2011, Dr. Ismail timely filed for an appeal requesting that the Board review the ALJ's decision and Plaintiff's exceptions to the ALJ's findings of law. On December 20, 2011, the Board issued an order upholding the decision of the ALJ, and concluding that CMS was authorized in revoking Dr. Ismail's billing privileges.

27. Dr. Ismail received the Board's decision on December 27, 2011. In accordance with the decision and applicable federal law, Dr. Ismail is filing this Complaint

within sixty (60) days of his receipt of the Board's decision.

## COUNT I
## REQUEST FOR JUDICIAL REVIEW OF BOARD'S DECISION

28.  Plaintiff incorporates by reference paragraphs (1) through (25) above as though set forth fully herein.

29.  Plaintiff seeks judicial review of the Board's decision to uphold the ALJ's findings of law and for concluding that CMS was authorized in revoking Dr. Ismail's billing privileges.

30.  42 C.F.R. § 498.59(i)(2) states the "[a]ny suspended or excluded practitioner, provider, or supplier dissatisfied with a hearing decision my request Departmental Appeals Board review *and has a right to seek judicial review of the Board's decision by filing an action in Federal district court.*" *Emphasis added.*

31.  Plaintiff contends that the Board misapplied the applicable federal laws in upholding CMS' revocation of Dr. Ismail's Medicare billing privileges, and therefore, the decision was both arbitrary and capricious, as the Board relied upon an unreasonable interpretation of the applicable statutes.

32.  Under applicable federal law a "physician" is defined to mean a doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the state in which he or she delivers medical services. 42 U.S.C. § 1395x(r); 42 C.F.R. § 410.20(b). However, neither 42 U.S.C. § 1395x(r) nor 42 C.F.R. § 410.20(b) specifically define the term "legally authorized to practice medicine," nor do they address the issue of whether a temporary and non-final suspension such as the ESO entered against Dr. Ismail by the DOH renders him not legally authorized to practice medicine in the state where the physician

delivers medical services.

33. Plaintiff contends that the Board was erroneous in their unreasonable interpretation of and reliance on 42 U.S.C. § 1395x(r) and 42 C.F.R. § 410.20(b) in upholding the revocation of Plaintiff's Medicare billing privileges. Plaintiff further contends that the Board, by not rejecting the ALJ's finding of law, rendered a decision that is arbitrary and capricious.

34. Furthermore, Plaintiff contends that 42 C.F.R. § 424.535(a)(1) requires that all providers and suppliers be granted an opportunity to correct the deficient compliance requirement before final determination to revoke billing privileges is made, except for those imposed under 42 C.F.R. § 424.535(a)(2), (a)(3) or (a)(5), none of which were relied upon by Highmark or the Defendant in revoking Dr. Ismail's Medicare billing privileges, and therefore, are not applicable in this case. Plaintiff, thus, contends that he has not been given a full opportunity correct the alleged deficiency in his compliance since Highmark and the Defendant did not permit him the opportunity to resolve the ESO and have it lifted and rescinded before revoking his Medicare billing privileges.

35. CMS may revoke a physician or non-physician practitioner provider's billing privileges for failure to report required adverse legal action under 42 C.F.R. § 424.516(d)(1)(ii) and (iii). 42 C.F.R. § 424.535(a)(9). However, those applicable federal regulations do not define the term "adverse legal action" within their provisions.

36. Rather, definitions for applicable terms in that regulation are included at 42 C.F.R. § 424.502 entitled "Definitions." That federal regulation does not define the term "adverse legal action." However, it does include the definition of the term "final adverse

action." That term is defined to include "[s]uspension or revocation of a license to provide health care by any State licensing authority." But, the term does not include any clarification as to whether a suspension is a temporary or permanent one, or whether the definition includes all types of suspensions. But, the term is entitled "**Final** adverse action" implying and stating that any such action must be a final action. (Emphasis added).

37. Plaintiff contends that the Board was erroneous in its unreasonable interpretation and reliance on 42 C.F.R. § 424.516(d)(1)(ii) in upholding the revocation of Plaintiff's Medicare billing privileges. Plaintiff further contends that the Board, by not rejecting the ALJ's finding of law, rendered a decision that is arbitrary and capricious.

38. Plaintiff further contends that the Board's decision is unlawful for it is unsupported by substantial evidence to show that Dr. Ismail was not in compliance with the applicable federal rules, and therefore, subject to statutory revocation of his Medicare billing privileges. Specifically, this matter was adjudicated on a motion for summary judgment which was granted by the ALJ and upheld by the Board. As the specific terms of Dr. Ismail's ESO were never examined by the ALJ or the Board, the agency was never presented with substantial evidence to support of revocation of Plaintiff's billing privileges pursuant to 42 C.F.R. § 424.535(a)(1) and/or 42 C.F.R. § 424.535(a)(9).

### FEDERAL QUESTION

39. Plaintiff contends that the language of the aforementioned federal statutes is ambiguous, and therefore, revocation of Plaintiff's Medicare billing privileges on reliance of those statutes was unlawful and in violation of the Medicare Act and the U.S. Constitution.

40. Plaintiff further contends that the Board, by misapplying the applicable

federal statutes, and/or relying upon the ambiguous language of those statutes, and in rendering a decision that was both arbitrary and capricious, revoked Plaintiff's Medicare billing privileges without procedural due process of law in violation of the Medicare Act and the U.S. Constitution.

41. Plaintiff reserves the right to supplement this Complaint with a supporting memorandum of law as a matter of course or through seeking leave of Court.

WHEREFORE, the Plaintiff, AKRAM ISMAIL, M.D., hereby respectfully requests that this Court review the decision of the Department of Health and Human Services Departmental Appeals Board, and in doing so, overturn their written decision to uphold the revocation of AKRAM ISMAIL, M.D.'s Medicare billing privileges, and such other and further relief as this Court may deem proper.

Respectfully submitted this 27th day of February 2012.

_____
Michael R. Lowe, Esq.
Florida Bar No. 0119271
Jack Tobias Cook, Esq.
Florida Bar No. 0088589
MICHAEL R. LOWE, P.A.
2180 West State Road 434, Suite 1124
Longwood, FL 32779
Phone: 407-332-6353
Fax: 407-332-7450
*Trial Counsel for Plaintiff, Akram Ismail, M.D.*